IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ACO SIMONOSKI, | ) | Case No. 1:16-cv-2981 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| BRIGHAM SLOAN, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.      Introduction

Petitioner Aco Simonoski seeks a writ of habeas corpus under 28 U.S.C. § 2254, claiming

that his convictions in *State v. Simonoski*, Case No. CR11-553775-A violated his constitutional

rights.  ECF Doc. No. 1.  Simonoski filed a memorandum in support of his petition at the time he

filed the petition.  ECF Doc. 1-2.  Warden Brigham Sloan, the respondent, filed a return of writ.

ECF Doc. 8.  Simonoski did not file a traverse.[1]

The matter is before me by an automatic order of reference under Local Rule 72.2 for

preparation of a report and recommendation on Simonoski's petition or other case-dispositive

motions.  Because the grounds stated in Simonoski's petition are time-barred and non-cognizable

or unmeritorious, I recommend that the Court DISMISS his petition.

---

[1] On April 23, 2018, the court issued an order requiring Simonoski to file his traverse by June 22, 2018.  As of the date of this filing, Simonoski has not filed a traverse.

## II.     State Court History

### A.     State Trial Court Conviction

A Cuyahoga County, Ohio grand jury issued an indictment on August 30, 2011 charging Simonoski with one count of attempted murder, four counts of felonious assault and two counts of domestic violence.  ECF Doc. 8-1 at Ex. 1, Page ID# 101-103.  Count One charged attempted murder in violation of Ohio Rev. Code § 2923.02(A).  Counts Two and Five charged felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1).  Counts Three and Six charged felonious assault in violation of Ohio Rev. Code § 2903.02(A)(2).  Counts Four and Seven charged domestic violence in violation of Ohio Rev. Code § 2919.25(A).  Id.

On September 2, 2011, Simonoski entered a not guilty plea to all charges.  ECF Doc. 8-1 at Ex. 2, Page ID# 104.  On November 18, 2011, Simonoski's counsel filed a motion for a competency evaluation.  ECF Doc. 8-1 at Ex. 3, Page ID# 105.  On November 28, 2011, the court referred Simonoski to the psychiatric clinic for a competency examination.  ECF Doc. 8-1 at Ex. 4, Page ID# 107.  After receiving the report of the competency evaluation, the court found that Simonoski was competent to stand trial.  ECF Doc. 8-1 at Ex. 5, Page ID# 108.

On March 30, 2012, Simonoski withdrew his original plea of not guilty and pleaded no contest to the indictment.  The court accepted his plea and found him guilty of the charges in the indictment.  ECF Doc. 8-1 at Ex. 6, Page ID# 109.  On May 2, 2012, the court sentenced Simonoski to serve an aggregate sentence of eighteen years.  ECF Doc. 8-1 at Ex. 7, Page ID# 110.  The sentencing journal entry was filed on May 14, 2012.  Id.

### B.     Direct Appeal

Simonoski filed a notice of appeal in the Ohio Court of Appeals on June 8, 2012.  ECF Doc. 8-1 at Ex. 8, Page ID# 112.  On appeal, Simonoski's attorney raised the following assignments of error:

2

1. Defendant was denied due process of law when the court imposed a consecutive sentence in violation of statutory law.

2. Defendant was denied due process of law when the court accepted a plea of no-contest without informing defendant concerning the effect of a plea of no-contest.

3. Defendant was denied his rights under the Sixth Amendment when the court based its sentence on the facts neither alleged in the indictment nor admitted at the time of the plea of no-contest.

4. Defendant was denied due process of law when the court, by rote incantation, imposed maximum consecutive sentences.

5. Defendant was subjected to cruel and unusual punishment when his criminal activities were in part caused by alcohol dependency and a major depression disorder.

ECF Doc. 8-1 at Ex. 9, Page ID# 114.  On March 21, 2013, the court of appeals affirmed the trial court's judgment.  ECF Doc. 8-1 at Ex. 11, Page ID# 170.  On April 24, 2013, the court of appeals denied a motion for reconsideration.  ECF Doc. 8-1 at Ex. 12, Page ID# 183.

### C.    Appeal to the Supreme Court of Ohio

On June 4, 2013, Simonoski's counsel filed a notice of appeal with the Ohio Supreme Court.  ECF Doc. 8-1 at Ex. 13, Page ID# 187.  Simonoski's memorandum in support of jurisdiction raised the following:

Proposition of Law No. I:
A defendant has been denied due process of law when the court imposes a consecutive sentence in violation of statutory law and the court of appeals upholds that discretion by amending a statute passed by the Ohio General Assembly.

Proposition of Law No II:

A defendant has been denied due process of law when the court accepts a plea of no-contest without informing a defendant of the effect of a no-contest plea.

Proposition of Law No. III:

A defendant has been denied his Sixth Amendment right when a court bases a maximum consecutive sentence on facts neither alleged in the indictment nor admitted at the time of a no-contest plea.

<u>Proposition of Law No. IV:</u>

A defendant has been denied due process of law when a court imposes a maximum consecutive sentence by rotely recited the statutory requirement.

<u>Proposition of Law No. V.</u>

A defendant has been subjected to a cruel and unusual punishment where his criminal activities were, in part, caused by alcohol dependency and a major depressive disorder.

ECF Doc. 8-1 at Ex. 14, Page ID# 190.  On September 4, 2013, the Ohio Supreme Court

declined jurisdiction.  ECF Doc. 8-1 at Ex. 16, Page ID# 220.  Simonoski did not appeal to the

United States Supreme Court.

### D.     Federal Habeas Corpus Petition

Simonoski filed his *pro se* petition for writ of habeas corpus in this Court on December

13, 2016.  ECF Doc. 1.  Simonoski's petition raises five grounds for relief:

**GROUND ONE**: Petitioner was denied due process of law when the court imposed a consecutive sentence in violation of statutory law**.**

**Supporting Facts:**  In this case, the court imposed consecutive sentences amounting to 18 years, with the sentence for attempted murder and the sentence for felonious assault to be served consecutively.  (Tr. 60-62).  Petitioner contends that the imposition of consecutive sentences violates the appealable law and his constitutional right to due process of law.

Section 2929.14.41(A) of the Ohio Revised Code states, in pertinent part:

"Except as provided in division (B) of this section, division (E) of section 2929.14, or division (D) or (E) of section 2971.03 of the Revised code, a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States."

R.C. 2929.14(E) only provides that certain crimes where a court can impose consecutive sentences.  These crimes include a violent sex offense, a designated homicide, assault, kidnapping offense, and an offense where the offender is adjudicated to be a sexually violent predator.  In addition, certain offenses under R.C. 2907.02 containing certain specifications or attempted rape convictions for a violation R.C. 2905.01 where the person is sentence under R.C. 2971.03. Moreover, certain sentences imposed under R.C. 2971.03 likewise authorize consecutive sentences.  However, those provisions are totally inapplicable to the

4

case at hand and the court was statutorily precluded from imposing a consecutive sentence.

Accordingly, the failure to follow the applicable law in imposing a sentence violated due process of law.

**GROUND TWO:**  Petitioner was denied due process of law when the court accepted a plea of no contest without informing defendant concerning the effect of a plea of no contest.

**Supporting Facts:**  Petitioner entered a plea of no-contest to each of the charges in the indictment.  The court outlined the various penalties for those offenses, including conditions of post-release control.  (Tr. 13-15).  All that the court stated concerning the no-contest plea was to advise Petitioner of his various constitutional trial rights that he was waiving by entering his plea, even at one point, stating Petitioner was pleading guilty rather than no-contest.

In light of the foregoing, the trial court violated Petitioner's due process rights by accepting his no-contest plea without informing of the effect of the plea.

**GROUND THREE:**  Petitioner was denied his rights under the Sixth Amendment when the court based its sentence on facts neither alleged in the indictment nor admitted at the time of the plea of no contest.

**Supporting Facts:**  Petitioner entered a plea of no-contest to each of the charges in the indictment.  The court outlined the various penalties for those offenses, including conditions of post-release control.  (Tr. 13-15).  All that the court stated concerning the no-contest plea was to advise Petitioner of his various constitutional trial rights that he was waiving by entering his plea, even at one point, stating Petitioner was pleading guilty rather than no contest.  In light of the foregoing the trial court violated Petitioner's due process rights by accepting his no-contest plea without informing him of the effect of the plea.

At sentencing, defense counsel objected to the court making findings in this case.  Defense counsel stated there was no trial in the case and none of the facts were stipulated to at the time of the plea.

Accordingly, the imposition of a maximum consecutive sentence of 18 years violated Petitioner's rights under the Sixth Amendment.

**GROUND FOUR:**  Petitioner was denied due process of law when the court, by rote incantation, imposed maximum consecutive sentences.

**Supporting Facts:**  At sentencing, the court, at the request of the prosecutor parroted rotely the perceived statutory criteria for imposing consecutive sentencing, stating:

I do find that in this case that consecutive sentences are necessary to protect the public from future crime and punish the offender and that the consecutive sentences are not disproportionate in this case to the seriousness of this offender's conduct and to the danger the offender possesses to the public.  And these multiple offenses were committed I further find as part of one or more courses of conduct and that the harm caused by these multiple offenses so committed were—was so great and unusual that no single prison term for one of these offenses committed as part of any of the courses of conduct would adequately reflect the seriousness of the offender's conduct.

No single prison term for any of the - - either of these offenses committed as part of any of the courses of conduct adequately reflects the seriousness of this offender's conduct.

It can be seen this was nothing more than a rote recitation of the statute with no appropriate findings.  Therefore, the consecutive sentence imposed without any factual findings, violated due process.

**GROUND FIVE:**  Petitioner was subjected to a cruel and unusual punishment when his criminal activities were in part caused by alcohol dependency and a major depressive disorder.

**Supporting Facts:**  Petitioner had been referred for a competency evaluation. Petitioner was determined not to be incompetent to stand trial because he did not have a diagnosed mental condition to be declared insane.  He was found to have a major depressive disorder and also alcohol dependence as found in the Court's Psychiatric Clinic, dated December 19, 2011.  (See *Report of Court Psychiatric Clinic,* attached to Memorandum as Exhibit D).

Accordingly, Petitioner was unconstitutionally sentenced to a term of imprisonment for 18 years when he suffered from a major depressive disorder and was addicted to alcohol.

ECF Doc. 1 at, Page ID# 4-10.  Simonoski filed a memorandum in support at the time he filed

the petition.  ECF Doc. 1-2.

On April 20, 2017, Warden Sloan filed a return of writ.  ECF Doc. 8.  On April 23, 2018,

the court issued an order noting that Simonoski had not filed a traverse and establishing a final

deadline of June 22, 2018.  Simonoski did not file a traverse.

### III.    General Standards of AEDPA Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Simonoski's petition for writ of habeas corpus.  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009).  AEDPA, which amended 28 U.S.C. § 2254, was enacted "to reduce delays in the execution of state and federal criminal sentences…and 'to further the principles of comity, finality, and federalism.'"  *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *(Michael) Williams v. Taylor*, 529 U.S. 420, 436 (2000)).

Petitions for habeas corpus relief under AEDPA are governed by the statute of limitations set forth in 28 U.S.C. § 2244.  Because Warden Sloan makes a statute of limitations argument for dismissal of Simonoski's entire petition, I have made a detailed review below of the applicable law pertaining to the AEDPA statute of limitations and its application to this case.

AEDPA "recognizes a foundational principle of our federal system:  State courts are adequate forums for the vindication of federal rights."  *Burt v. Titlow*, 571 U.S. 12, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013).  It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  *Id*.  One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d).  That provision forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> 1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis original). A state court has adjudicated a claim "on the merits," and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision. *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

 "Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). The state court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). And a state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). And "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

"In order to have an unreasonable application of clearly established Federal law, the state-court decision must be 'objectively unreasonable,' not merely erroneous or incorrect.  This standard requires the federal courts to give considerable deference to state-court decisions. *Ferensic v. Birkett*, 501 F.3d 469, 472 (6th Cir. 2007) (citation omitted).  AEDPA essentially says to federal courts, 'hands off, unless the judgment in place is based on an error grave enough to be called unreasonable.'  *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)."  *Wilkins v. Timmerman-Cooper*, 512 F.3d 768, 774 (6th Cir. 2008) (internal quotation marks omitted).

A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the court made a "clear factual error."  *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003).  As noted above, a habeas petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence."  *Burt*, 134 S. Ct. at 15; *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).  This requirement mirrors the "presumption of correctness" AEDPA affords state-court factual determinations, which only can be overcome by clear and convincing evidence.  28 U.S.C.  § 2254(e)(1).  The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt*, 134 S. Ct. at 15 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Indeed, the Supreme Court repeatedly has emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state court adjudications of federal claims.  The Court has admonished that a reviewing court may not "treat[] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington*, 562 U.S. at 102; *see also Schriro v. Landrigan*, 550

U.S. 465, 473 (2007)("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold.").  Rather, § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Harrington*, 562 U.S. at 102-03 (internal quotation marks omitted).  Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Id*. at 103.  This is a very high standard, which the Court readily acknowledges:  "If this standard is difficult to meet, that is because it is meant to be."  *Id*. at 102.

## IV.    Statute of Limitations

### A.      Expiration of AEDPA One-Year Statute of Limitations

Warden Sloan argues initially that the AEDPA statute of limitations bars all of Simonoski's grounds for relief.  Under 28 U.S.C. § 2244(d)(1), a state prisoner must file a habeas corpus petition within one year from the latest of four circumstances:

> (A)  the date on which the [state-court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or,
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Thus, the court's first task is to decide the statute of limitations commencement date.

Warden Sloan contends that § 2244(d)(1)(A) applies.  In § 2244(d)(1)(A) analysis, "direct review" of a petitioner's conviction includes review by the United States Supreme Court. *Lawrence v. Florida,* 549 U.S. 327, 333 (2007); *Clay v. United States,* 537 U.S. 522, 527-528 (2003); *Bronough v. Ohio,* 235 F.3d 280, 283 (6th Cir. 2000).  Pursuant to Sup. Ct. R. 13, a criminal defendant has 90 days following the entry of a judgment by the "state court of last resort" in which to file a petition for a writ of certiorari.  Here, Simonoski's § 2244(d)(1)(A) one-year statute of limitation began to run when the time for filing a petition for a writ of certiorari for direct review in the United States Supreme Court expired, 90 days after the state supreme court declined jurisdiction.

The Ohio Supreme Court denied Simonoski's discretionary direct appeal on September 4, 2013.  ECF Doc. 8-1 at Ex. 16, Page ID# 220.  Simonoski did not file a petition for a writ of certiorari in the United States Supreme Court by the December 4, 2013 90 day deadline.  ECF Doc. 8, Page ID# 74.  Thus, the AEDPA statute of limitation began running the next day, December 5, 2013, and expired one year later on December 5, 2014.

Simonoski did not file his federal habeas petition until December 13, 2016, more than two years after the AEDPA statute of limitations expired.  Unless the expiration of the statute of limitation was tolled, Simonoski's habeas petition is time barred.

**B.     Statutory Tolling of AEDPA's Statute of Limitations**

The AEDPA has a statutory tolling provision, which, under specific circumstances, extends the one-year statute of limitations.  Under § 2244(d)(2), the time during which a properly filed application for state post-conviction or other collateral relief is pending tolls the one-year limitations period.  *See* 28 U.S.C. § 2244(d)(2).  In order to stop the running of the AEDPA

11

limitations period, the state-court petitions and applications must be both "pending" and "properly filed." *Id.* Untimely motions are not deemed "properly filed" and do not stop the one-year clock. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). This is so even when there are exceptions to a state timely-filing requirement, such as Ohio Appellate Rule 26(B)'s "good cause" exception to its filing deadline for reopening applications. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005). Thus, "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Id.* at 414 (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002)). Finally, AEDPA's statutory tolling "does not . . . 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Winkfield v. Bagley*, 66 Fed. App'x 578, 581 (6th Cir. 2003).

Here, no statutory tolling applies because Simonoski did not file anything from the time the Ohio Supreme Court declined jurisdiction until he filed his habeas petition, three years later. In fact, Simonoski argues only for equitable tolling in his petition. ECF Doc. 1-2 at Page ID# 23-27.

### C.      Equitable Tolling of the AEDPA Statute of Limitations

The AEDPA statute of limitations may be tolled on equitable grounds in appropriate cases. *Holland v. Florida*, 560 U.S. 631, 645 (2010). Equitable tolling "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond [his] control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (internal quotation marks omitted.) "[A]lthough 'the party asserting statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run,' the petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable

12

tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011) (quoting *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)).  To do so, the petitioner must show that (1) "he has been pursuing his rights diligently," and (2) that "some extraordinary circumstance stood in his way and prevented timely filing."  *Holland*, 560 U.S. at 649.  Equitable tolling is granted sparingly and is evaluated on a case-by-case basis.  *Ata*, 662 F.3d at 741.

Simonoski argues that the extraordinary circumstance preventing his timely filing was his mistaken belief that his attorney had already filed his habeas petition.  Simonoski explains that "this belief originated when Petitioner received a Petition for Writ of Habeas Corpus that had been completed by Mr. Mancino, with instructions for Petitioner to sign the Petition and return the same to Mr. Mancino for filing."  ECF Doc. 1-2 at Page ID# 26; Doc 1-3 at Page ID # 29. According to Simonoski, after he returned the petition to Mancino in April 2014, he believed that it was filed.  Id.

Simonoski waited nearly two years before he followed-up on his habeas petition.  He claims that he spoke to an "inmate legal clerk" on an unspecified date who told him that the procedure for habeas corpus was a long one and that he should be patient.  On March 22, 2016, Simonoski wrote to our clerk's office and asked about his petition.  In this letter, Simonoski stated that after Mr. Mancino filed his habeas petition, he had a dispute with him over fees and was no longer communicating with him.  ECF Doc. 1-5 at Page ID# 36.  The clerk's office responded that no Simonoski case was found.

Simonoski states that he then contacted the Cuyahoga County Clerk of Courts in April 2016 and requested the "essential documents" filed in this case.  ECF Doc. 1-2 at Page ID# 27. He filed his habeas petition eight months later, on December 13, 2016.  ECF Doc. 1.

Both ineffective assistance of counsel and a "substantial, involuntary delay in learning about the status of a case may constitute extraordinary circumstances sufficient to warrant relief if the circumstances were both beyond the control of the litigant and unavoidable with reasonable diligence. *Robertson,* 624 F.3d at 783.  But, the statute of limitations will only be tolled if the circumstances were both beyond the control of the litigant and unavoidable with due diligence. *Id.*  Here, Simonoski has presented facts arguably showing that his counsel's failure to file his habeas petition caused him to miss the deadline.  However, he has not shown that he was unavoidably prevented from learning that his petition was not filed.  In other words, he has not shown that the considerable delay in learning that the petition had not been filed was involuntary.  Simonoski's filings are silent on what he did for the many months between the return of his petition to Attorney Mancino and the time of his March 2016 letter to our clerk's office.  There is no evidence of any attempt by Simonoski to ever verify with Mancino that he had filed a habeas petition.  Simonoski's affidavit asserts that he "began discussing my case with a friend" after he was transferred from the Trumbull Correctional Institution to the Lake Erie Correctional Institution (ECF Doc. 1-3, Page ID# 30), but he never indicated when the transfer happened or what he had done before the transfer to investigate or protect his rights.  Simonoski similarly did not indicate when he spoke to the inmate legal clerk or how much time elapsed between the discussion with the legal clerk and the sending of his letter to our clerk of court.  Also, Simonoski has submitted no evidence to support his contention that he and Mancino had a fee dispute.  And he has not submitted a photocopy of the allegedly signed habeas petition that he asserts he returned to Mancino.

Nor has Simonoski explained why it took months for him to file his petition even after he learned Attorney Mancino did not file one for him.  According to him, Mancino sent him a copy

14

of a habeas petition in April 2014.  Even if Simonoski made considerable revisions to the existing petition, he has not accounted for his subsequent eight month filing delay.

As noted by the warden, the Sixth Circuit stated in *Keeling v. Warden, Lebanon Corr. Inst.,* 673 F.3d 452, 463, that it had never granted equitable tolling to a petitioner who sat on his rights for a year and a half.  It appears Simonoski waited longer than that before contacting our clerk's office to check on the status of his petition, despite his purported fee dispute with his attorney who apparently was not communicating with him.  ECF Doc. 1-5 at Page ID# 36. Simonoski then waited another eight months before filing his petition.  He has not shown that his delays were involuntary or that he diligently pursued his rights.  The bottom line: Simonoski knew of his right to seek habeas relief by the time his lawyer sent him a filled-out petition in April 2014.  Had Simonoski filed the petition then, it would have been timely.  He did not. Instead, he waited until December 2016 to file.  Even if the purported fee dispute with his lawyer interfered with his filing, Simonoski was not diligent in pursuing his rights and he should not get the benefit of equitable tolling of the AEDPA statute of limitations.

**D.**     **Actual Innocence Exception to AEDPA's Limitations Statute**

Finally, habeas petitioners may be entitled to an equitable exception to the AEDPA statute of limitations under the "actual innocence" or "miscarriage of justice" gateway to federal habeas review set forth in *Schlup v. Delo,* 513 U.S. 298 (1995).  *McQuiggin v. Perkins,* 133 S.Ct. 1924, 1928 (2013).  "[T]enable actual innocence gateway pleas are rare,"  however, as a petitioner "'must persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  *Id.* (quoting *Schlup,* 513 U.S. at 329).  Actual innocence claims must be supported by "new reliable

15

evidence" that demonstrates factual innocence, not merely the legal insufficiency of the conviction.  *See Schlup,* 513 U.S. at 324; *Bousley v. United States,* 523 U.S. 614, 623 (1998).

Simonoski has neither argued nor offered evidence to support an actual innocence claim regarding the crimes of which he was convicted.  In fact, his grounds for this habeas petition relate to his sentencing and to his competency evaluation.  He does not deny that he committed the acts leading to his convictions.  He admits that he grabbed an axe and struck his wife in the head several times and his daughter on her hand while she attempted to save her mother's life.  ECF Doc. 1-3 at Page ID# 29.  The actual innocence exception to AEDPA's limitations statute is inapplicable.  Simonoski's entire habeas petition is untimely and I recommend that the Court dismiss it on that basis.

## V.    Non-Cognizable Claims

Given the foregoing, it is unnecessary to evaluate the remainder of Warden Sloan's arguments for denial of Simonoski's petition or to reach the merits of his claims.  However, even if Simonoski's grounds were not barred by AEDPA's statute of limitations, they would still fail as a matter of law, as explained below.

Claims alleging only violations of state law are not cognizable upon federal habeas review and must be dismissed on that basis unless a fundamental violation of petitioner's due process rights has occurred.  "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state

law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process." (Citation omitted)).

Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68).  A federal habeas court cannot function as an additional state appellate court reviewing state courts' decisions on state law or procedure.  *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).  Even if the state court made errors in the application of state law, no cognizable issue arises unless there has been a denial of fundamental fairness.  *Wilson v. Sheldon*, 874 F.3d 470, 475 (6th Cir. 2017).

State-court rulings on issues of state law may "rise to the level of due process violations [if] they offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).  They must be "so egregious that [they] result in a denial of fundamental fairness."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Fundamental fairness under the Due Process Clause is compromised where "the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'"  *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal citations omitted). Courts, therefore, '"have defined the category of infractions that violate 'fundamental fairness' very narrowly.'"  *Id*. (quoting *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)).

A habeas petitioner must do more than simply assert that a claim arises under a federal constitutional provision.  To be cognizable in federal habeas corpus, the petitioner must demonstrate that there were constitutional errors committed by the state court that were material

to the outcome of the case, and that resulted in a denial of fundamental fairness to the petitioner. *Jameson v. Wainwright*, 719 F.2d 1125, 1126 (11th Cir. 1983), cert. denied, 466 U.S. 975 (1984); *Walker v. Engle*, 703 F.2d 959 (6th Cir. 1983).  To say that a petitioner's claim is not cognizable on habeas review is thus another way of saying that his claim "presents no federal issue at all."  *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991).

### A.      Grounds One, Three and Four

In addition to making a statute of limitations argument, Warden Sloan argues that Simonoski's Grounds One, Three and Four are merely sentence-related and are not cognizable on habeas review.  Ground One asserts that Simonoski was denied due process when the court imposed a consecutive sentence in violation of statutory law.  ECF Doc. 1 at Page ID# 4. Ground Three asserts that he was denied his rights under the Sixth Amendment when the court based its sentence on facts neither alleged in the indictment nor admitted at the time of the no contest plea.  ECF Doc. 1 at Page ID# 7.  Ground Four asserts that he was denied due process when the court, by rote incantation, imposed maximum consecutive sentences.  ECF Doc. 1 at Page ID# 9.

In Ground One, Simonoski argues that his due process rights were violated when the trial court imposed consecutive sentences in violation Ohio Rev. Code. § 2929.41(A).  A sentence may violate due process if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct.  *See Townsend v. Burke*, 334 U.S. 736, 741, 92 L. Ed. 1690, 68 S. Ct. 1252 (1948); see also *United States v. Tucker,* 404 U.S. 443, 447, 30 L. Ed. 2d 592, 92 S. Ct. 589 (1972); *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990).  However, Ground One does not assert that the trial court carelessly or deliberately pronounced a sentence on a materially false foundation.

18

Rather, in Ground One, Simonoski argues that the trial court's sentence violated Ohio's sentencing statutes.  But this argument is unavailing because, even if the trial court did violate Ohio Rev. Code. § 2929.41(A), this court does not review errors of state law.  *Swarthout v. Cooke,* 562, U.S. 216, 222, 131 (2011), citing *Engle,* 435 U.S. at 121; *Estelle,* 502 U.S. at 67-68.  Moreover, the state court's review of its own law is binding on this court.  *Bradshaw,* 546 U.S. at 76.  The Ohio Court of Appeals considered this argument and held:

> {¶ 5}  In his first assigned error, Simonoski contends the trial court erred when it sentenced him to consecutive prison terms because it was contrary to law.  Specifically, he argues that pursuant to R.C. 2929.41(A) there is a presumption that a sentence is concurrent unless it includes one of the exceptions listed in the statute.  When Simonoski was sentenced in May 2012, R.C. 2929.41(A) stated:

>> Except as provided in division (B) of this section, division (E) of section 2929.14, or division (D) or (E) of section 2971.03 of the Revised Code, a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States.  Except as provided in division (B)(3) of this section, a jail term or sentence of imprisonment for misdemeanor shall be served concurrently with a prison term or sentence of imprisonment for felony served in a state or federal correctional institution.

> {¶ 6}  Simonoski argues that because none of the listed exceptions pertained to him, the court should have imposed concurrent sentences.  This court has previously addressed prior R.C. 2929.41(A) and has held that the statute's reference to R.C. 2929.14(E) is a typographical error and that the legislature meant to state R.C. 2929.14(C)(4), which concerns making findings prior to imposing a consecutive sentence.  *State v. Walker*, 8th Dist. No. 97648, 2012 Ohio 4274, at fn. 2;  *State v. Ryan*, 8th Dist. No. 98005, 2012 Ohio 5070, 980 N.E.2d 553.  Relying on our case in *Ryan*, the Second District in *State v. Hess*, 2d Dist. No. 25144, 2013 Ohio 10, ¶ 11 and 13, explained:

>> With H.B. 86, Ohio's sentencing scheme again requires judicial fact-finding for consecutive sentences.  R.C. 2929.41(A), which was severed by *Foster*, was reenacted without alteration.  Former R.C. 2929.14(B) and (C), which had been severed, were formally deleted, and the judicial fact-finding requirement for consecutive

sentencing, previously set forth in R.C. 2929.14(E), was reenacted
and codified as R.C. 2929.14(C).

* * *

R.C. 2929.41(A), as amended by H.B. 86, failed to reflect the
renumbering of the judicial fact-finding requirements for
consecutive sentencing from R.C. 2929.14(E) to R.C. 2929.14(C).
And it is apparent that the reference to R.C. 2929.14(E), rather
than R.C. 2929.14(C), in R.C. 2929.41(A) is a typographical error.
As noted by the Eighth District, given that R.C. 2929.41(A), as
amended by H.B. 86, already referred to specific subsections of
R.C. 2971.03, 'the further reference to R.C. 2929.14(E), which
points to other portions of R.C. 2971.03, appears to be
surplusage.* * * [C]ourts must avoid statutory interpretations that
render any part of a statute "surplusage or nugatory."' *State v.
Ryan*, 8th Dist. Cuyahoga No. 98005, 2012 Ohio 5070, ¶ 15, 980
N.E.2d 553, citing *Westgate Ford Truck Sales, Inc. v. Ford Motor
Co*., 2012 Ohio 1942, 971 N.E.2d 967, ¶ 14 (8th Dist.).

{¶ 7}  In fact, the legislature made its intent clear by recently amending the
section in September 2012, to change the (E) to (C).  Accordingly, we
conclude the trial court correctly interpreted the statute and did not err by
imposing consecutive sentences.  Accordingly, Simonoski's first assigned
error is overruled.

Ohio Rev. Code § 2929.41(A) is a state law.  The Ohio Court of Appeals' interpretation of Ohio

sentencing law did not result in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the

United States.[2]  Nor did it result in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the state court proceeding.  The state court's

decision is entitled to AEDPA deference.  Ground One of Simonoski's petition does not present

any federal issues; it involves nothing but an interpretation of state law.  Thus, even if it were not

---

[2] In his brief to the state court of appeals, Simonoski cited *Fiore v. White*, 531 U.S. 225, 228-229 (2001), arguing
that a failure to follow the applicable law imposing a sentence violated due process of law.  In *Fiore*, the state failed
to present evidence to prove a basic element of the crime of which Fiore had been convicted.  The Supreme Court
held that the Due Process Clause of the Fourteenth Amendment forbids a state to convict a person of a crime without
proving the elements of that crime beyond a reasonable doubt.  *Fiore*, 531 U.S. at 229.  *Fiore* is inapposite.  Here,
Simonoski does not argue that the state failed to prove an element of his charges.  He entered a no-contest plea.

barred by the statute of limitations, I would recommend it be dismissed as non-cognizable on habeas review.

Ground Three also involves Simonoski's sentence.  Ground Three asserts that Simonoski's Sixth Amendment rights were violated when the court based its sentence on information from the sentencing hearing.  ECF Doc. 1 at Page ID# 7.  This ground lacks merit. Ohio Rev. Code § 2930.14(B) *requires* the trial court to consider victim's statements when imposing the sentence.  As long as a sentence remains within the statutory limits, trial courts have wide discretion to determine "the type and extent of punishment for convicted defendants." *Williams v. New York*, 337 U.S. 241, 245, 93 L. Ed. 1337, 69 S. Ct. 1079 (1949).  Generally, habeas claims arising out of state sentencing issues are not cognizable on habeas review.  *See Lucey v. Lavigne,* 185 F.Supp.2d 741, 745 (E.D. Mich. 2001).

And like Ground One, Ground Three is not cognizable on habeas review because it only involves application of Ohio sentencing law.  *See Estelle*, 502 U.S. at 67-68; *Pulley v. Harris*, 465 U.S. 37, 41, 79 L. Ed. 2d 29, 104 S. Ct. 871 (1984); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir.1988) ("federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures.")   Also like Ground One, the Ohio Court of Appeals considered the argument asserted in Ground Three:

> {¶ 15}  In his third and fourth assigned errors, Simonoski argues the trial court erred by imposing a maximum, consecutive sentence because the court relied on facts not in the indictment or admitted at the time of the hearing, and that because the trial court engaged in a rote recitation of the sentencing statute, it failed to engage in an independent analysis.

> {¶ 16} At the hearing, the trial court reviewed the presentence investigation report, photographs from the crime scene, and the victim impact statements given by Simonoski's children.  One of Simonoski's daughters was also present when Simonoski attempted to murder her mother, and in fact, was also struck by the ax.  Therefore, her impact statement included a recitation of the event and how mentally she will suffer from the horrific

21

memories the rest of her life.  Simonoski's wife was unable to speak for herself because of the injuries she suffered from the attack, she resides in a nursing home.  However, Simonoski's daughter described the impact the assault had on her mother.  Her mother no longer can see, talk, or perform basic life functions due to the brain injuries caused by being struck by the ax.  All of Simonoski's children asked the court to impose the maximum sentence.

{¶ 17} We conclude consideration of all this evidence was appropriate in determining the sentence to be imposed.  Pursuant to R.C. 2930.14, the victims can give oral or written statements at the hearing in which they detail the harm suffered and sanction that should be imposed. The trial court also did not err by reviewing the photographs and PSI prior to sentencing. R.C. 2947.06; *State v. Page*, 8th Dist. No. 90485, 2008-Ohio-4244.

This court is not permitted to interfere with the Ohio Court of Appeals' conclusions on Simonoski's Ohio law claims.  Those conclusions are binding on this court.  *Bradshaw,* 546 U.S. at 76.  Moreover, Simonoski has not identified anything within the Ohio Court of Appeals decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  He has submitted nothing to show that the trial court's sentencing decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The state court's decision is entitled to AEDPA deference.  Ground Three of Simonoski's petition does not present any federal issues; it involves nothing but an application of state law.[3]  Thus, even if it were not barred by the statute of limitations, I would recommend that Ground Three be dismissed as non-cognizable on habeas review.

---

[3] *Simonoski* has not filed a traverse in this case and his petition contains very little analysis or argument.  In looking back to the brief he filed in the state court of appeals, the undersigned notes that he cited several decisions from the U.S. Supreme Court in support of the argument he asserts in Ground Three.  He cited *Solem v. Helm,* 463 U.S. 277 (1983); *Ingraham v. Wright,* 430 U.S. 651, 667 (1977); and *Robinson v. California,* 370 U.S. 660, 666-667 (1962) for the proposition that a punishment cannot be "grossly disproportionate" to the severity of a crime. ECF Doc. 8-1 Page ID# 127.  These cases involved crimes of writing a bad check, corporal punishment in a school setting, and drug addiction.  They did not involve violent offenses resulting in serious physical harm.  These cases are factually distinguishable and further discussion of them is unnecessary.

22

Ground Four asserts that the trial court violated Simonoski's due process rights when, by "rote incantation" of the Ohio sentencing statute, it imposed maximum consecutive sentences. ECF Doc.1 at Page ID# 9.  Like Grounds One and Three, Ground Four involves only the interpretation and application of Ohio's sentencing laws.  The Ohio Court of Appeals resolved Ground Four as follows:

> {¶ 18} Our review of the record also shows the trial court engaged in the appropriate analysis in deciding to impose a maximum, consecutive sentence.  With the enactment of Am. Sub. H.B. No. 86, effective September 30, 2011, the General Assembly has revived the requirement that trial courts make findings before imposing consecutive sentences under R.C. 2929.14(C).  *State v. Bonner*, 8th Dist. No. 97747, 2012-Ohio-2931, ¶ 5.  Under R.C. 2929.14(C)(4), in imposing consecutive sentences, the trial court must first find that the sentence is necessary to protect the public from future crime or to punish the offender.  Next, the trial court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.

> {¶ 19} Finally, the trial court must find that at least one of the following applies: (1) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction imposed pursuant to R.C. 2929.16, 2929.17, or 2929.18, or while under postrelease control for a prior offense; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. R.C. 2929.14(C)(4)(a)-(c).

> {¶ 20} As Simonoski concedes, the trial court stated the requirements listed in the statute verbatim; however, Simonoski argues the trial court should have engaged in an independent analysis.  There was no reason for the court to state its reasons for the findings.  The General Assembly deleted R.C. 2929.19(B)(2)(c) in H.B. 86.  This was the provision in S.B. 2 that had required sentencing courts to state their reasons for imposing consecutive sentences on the record.  Accordingly, a trial court is not required to articulate and justify its findings at the sentencing hearing. Thus, although a trial court is free to articulate or justify its findings, there

is no statutory requirement that it do so. *State v. Goins,* 8th Dist. No. 98256, 2013 Ohio 263 ¶ 11.

{¶ 21} Accordingly, Simonoski's third and fourth assigned errors are overruled.

The Ohio Court of Appeals' conclusion on Ohio law is binding on this court. *Bradshaw,* 546 U.S. at 76. Moreover, Simonoski has not identified anything within the Ohio Court of Appeals decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Nor has he shown that the trial court's sentencing decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The state court's decision is entitled to AEDPA deference. Ground Four of Simonoski's petition does not present any federal issues; it involves nothing but an application of Ohio sentencing law. Thus, even if it were not barred by the statute of limitations, I would recommend that Ground Four be dismissed as non-cognizable on habeas review.

### B.      Ground Two

Ground Two asserts that Simonoski's due process rights were violated when the court accepted a no-contest plea without informing him of the effect of such a plea. ECF Doc. 1 at Page ID# 6. Simonoski does not specify what it was about the trial court's plea colloquy that was deficient. He admits that the court outlined the various penalties and advised him of the various constitutional trial rights that he would waive by entering a no contest plea. ECF Doc. 1 at Page ID# 6. It does not appear that the trial judge failed to explain the effects of Simonoski's no-contest plea. And even if he did, Simonoski's ability to challenge the proceedings leading up to his plea is limited.

After the entry of an unconditional plea, a defendant may only attack the court's jurisdiction and the voluntary and intelligent character of the plea itself. *Werth v. Bell,* 692 F.3d

24

486 (6th Cir. 2012); *Tollett v. Henderson,* 411 U.S. 258, 266 (1973).  "[G]uilty pleas 'not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'"  *Ruelas v. Wolfenbarger,* 580 F.3d 403, 408 (6th Cir. 2009) (quoting *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)).  The same standard applies to the validity of a no-contest plea.  *See Fautenberry v. Mitchell,* 515 F.3d 614, 636-637 (6th Cir. 2008).  The validity of the plea must be determined from the "totality of the circumstances."  *Abdus-Samad v. Bell,* 420 F.3d 614, 631 (6th Cir. 2005) (citing *Brady,* 397 U.S. 747).

A guilty or no-contest plea renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt.  *Menna v. New York*, 423 U.S. 61, 96 S. Ct. 241, 46 L. Ed. 2d 195 (1975).  "[A] voluntary and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on the conviction.'"  *United States v. Corp*, 668 F.3d 379, 384 (6th Cir. 2012).  A guilty plea constitutes a break in the chain of events leading up to it.  *Tollett v. Henderson*, 411 U.S. 258, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973).  Federal habeas corpus review of claims raised by a petitioner who has entered a guilty plea is limited to "the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity."  *Tollett*, 411 U.S. at 266.  A guilty plea bars a defendant from raising in a federal habeas corpus proceeding such claims as the defendant's right to trial and the right to test the state's case against him.  *McMann v. Richardson*, 397 U.S. 759, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970);  *McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969).

When a habeas petitioner challenges the validity of his plea, "the state generally satisfies its burden [to show that the plea was voluntary and intelligent] by producing a transcript of the

state court proceeding." *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).  "Solemn

declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S.

63, 74, 97 S.Ct. 1621, 52 L. Ed. 2d 136 (1977).  The state court's factual finding that the plea

was proper is accorded a presumption of correctness unless the transcript is inadequate to show

that the plea was voluntary and intelligent. *Garcia*, 991 F.2d at 326-327; see U.S.C. § 2254

(e)(1).

Respondent filed the transcript from the plea hearing in state court.  During the plea

colloquy, which took place on March 30, 2012, the prosecutor listed the charges in the

indictment and explained the possible sentences that Simonoski would face as a result of his

plea, including the maximum amounts of prison that the trial judge could order.  ECF Doc. 8-2 at

Page ID# 226-229.  The trial judge explained to Simonoski that he could possibly face

deportation as a result of pleading no contest.  ECF Doc. 8-2 at Page ID# 230-231.  He also

explained that Simonoski would give up constitutional rights by entering a no-contest plea,

including his right to a jury trial or bench trial, the right to publicly testify, to face his accusers,

to call witnesses to testify and the right against compulsory self-incrimination.  ECF Doc. 8-2 at

Page ID# 231-233.  Simonoski indicated that he understood each of the rights he was forfeiting

and, when given opportunities, did not ask any questions.  ECF Doc. 8-2 at Page ID# 233.  The

trial judge then explained the charges in the indictment again and the possible sentences.

Simonoski indicated that he understood each charge and the possible sentences.  He stated that

he was satisfied with his attorney.  ECF Doc. 8-2 at Page ID# 235.  The trial judge asked

Simonoski if there was anything that he did not understand about the proceedings or that he

would like more fully explained and Simonoski responded "I understand."  Id.  Simonoski then

entered a no-contest plea to each charge in the indictment.   There was nothing unusual about this plea colloquy, and Simonoski does not argue that his plea was involuntary or uninformed.

The Ohio Court of Appeals resolved Ground Two as follows:

Effect of Plea

{¶ 8}  In his second assigned error, Simonoski argues the trial court failed to comply with Crim. R. 11 because it failed to explain to him the effect of his plea.  The effect of a no contest plea is set forth in Crim. R. 11(B)(2), which states:

> The plea of no contest is not an admission of defendant's guilt [as is the effect of a guilty plea], but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding.

{¶ 9}  Informing a defendant of the effect of his or her plea is a nonconstitutional right, and, therefore, is subject to review for substantial compliance rather than strict compliance.  *State v. Griggs*, 103 Ohio St.3d 85, 2004 Ohio 4415, 814 N.E.2d 51, ¶ 11-12.  "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving."  *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).  Furthermore, "failure to comply with nonconstitutional rights will not invalidate a plea unless the defendant thereby suffered prejudice."  *Griggs* at ¶ 12.  The test for prejudice is "whether the plea would have otherwise been made."  *Nero* at 108.

{¶10}  Our review of the record shows that Simonoski subjectively understood the effects of his plea.  The trial court explained to Simonoski the possible maximum sentence, the rights he was waiving, and the fact he will be deported upon being released from prison.  Although the court did not explicitly inform Simonoski that he was admitting the facts in the indictment, the court read the indictment for each charge and Simonoski stated he pled no contest to each one.  Additionally, the court asked counsel, who is also the counsel on appeal, whether he was satisfied that the court complied with Crim. R. 11, and counsel responded that he was.  Additionally, the court asked Simonoski, "Is there anything about this case or these proceedings that you do not understand or that you would like more fully explained?"  Simonoski responded, "I understand," and his counsel responded, "He understands."

{¶11}  Further, even if the court failed to substantially comply with explaining the effects of his plea, Simonoski still has to prove he was prejudiced by the court's failure.  Simonoski argues that the fact there was no compliance absolves him of the duty to prove he was prejudiced and cites to cases dealing with misdemeanors and one dealing with the failure to advise regarding postrelease control.  However, although that may be the law as to misdemeanors and postrelease control, the Ohio Supreme Court has consistently held that the court's failure to tell the defendant the effect of a plea to a felony, does not invalidate the plea unless appellant shows that he was prejudiced by the court's failure to substantially comply with the rule.  *State v. Griggs,* 103 Ohio St.2d 85, 2004 Ohio 4415, 814 N.E.2d 51, ¶ 12; *State v. Jones*, 116 Ohio St.3d 211, 2007 Ohio 6093, 877 N.E.2d 677, ¶ 53; *State v. Veney*, 120 Ohio St.3d 176, 2008 Ohio 5200, 897 N.E.2d 621, ¶ 14-17. *See also State v. Petitto*, 8th Dist. No. 95276, 2011 Ohio 2391, ¶ 5-8 (court's failure to advise the defendant regarding the effect of the plea did not prejudice the defendant).

{¶ 12}  To show prejudice, Simonoski must demonstrate that he would not have entered a no contest plea if the court provided more detail regarding the effects of his plea.  *Id.*  Simonoski provides no support for his contention that he was prejudiced.  Moreover, as we held in *Petitto*:

> [T]he court did not specifically ask appellant if he understood that his plea was a complete admission of his guilt.  Nonetheless, the Ohio Supreme Court has held that unless a defendant asserts "actual innocence," "he is presumed to understand that he has completely admitted his guilt," and a "court's failure to inform the defendant of the effect of his guilty plea as required by Crim. R. 11 is presumed not to be prejudicial."  *State v. Griggs*, 103 Ohio St.3d 85, 2004 Ohio 4415, 814 N.E.2d 51, syllabus; *see also, State v. Taylor*, Cuyahoga App. No. 94569, 2010 Ohio 5607; *State v. Thomas*, Cuyahoga App. No. 94788, 2011 Ohio 214. *Id.* at ¶ 8.

{¶ 13}  Although the *Petitto*, *Taylor*, and *Thomas* decisions all concerned guilty pleas, we conclude the same analysis applies to no contest pleas. Simonoski never asserted his innocence; therefore, we presume the court's failure to advise him regarding the effect of his no contest plea was not prejudicial.

{¶ 14}  The cases cited to by Simonoski in support of his argument are distinguishable because they are misdemeanor cases in which the court pursuant to both Crim. R. 11(E) and Traf. R. 10 has to advise the defendant of the effect of the plea.  "A trial court's obligations in accepting a plea depend upon the level of offense to which the defendant is pleading." *Jones*, 116 Ohio St.3d 211, 2007 Ohio 6093, 877 N.E.2d 677, at ¶ 6.  Unlike in felony cases, misdemeanor cases only require the court to

28

> advise the defendant of the effect of the plea; the court is not required to
> advise the defendant pursuant to Crim. R. 11(C).  Accordingly,
> Simonoski's second assigned error is overruled.

The Ohio Court of Appeals' conclusion on Ohio law is binding on this court.  *Bradshaw,* 546

U.S. at 76.

Ground Two also lacks merit.  Simonoski has not explained how the trial court's alleged

failure to advise him of his rights before pleading resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States; or resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding.

Simonoski has not explained in what way the trial court failed to advise him of the "effect of his

plea."  His petition admits that the court outlined the various penalties for the offenses in the

indictment and advised him of various constitutional rights that he would waive.  ECF Doc. 1 at

Page ID# 6.  Respondent filed the transcript from the plea hearing.  It contains no irregularities.

In fact, Simonoski does not even argue that his plea was involuntary or uninformed.  Nor does he

argue that the trial court lacked jurisdiction.  And, the Ohio Court of Appeals' decision on this

issue is entitled to deference.  For these reasons, even if Ground Two were not barred by the statute

of limitations, I would recommend that it be denied.

### C.    Ground Five

Ground Five asserts that Simonoski was subjected to cruel and unusual punishment

because his criminal activities were in part caused by alcohol dependency and a major depressive

disorder.  ECF Doc. 1 at Page ID# 10.  In *Harmelin v. Michigan*, a plurality of the Supreme

Court concluded that the Eighth Amendment "does not require strict proportionality between

crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate'

to the crime." 501 U.S. 957, 1001, 115 L. Ed. 2d 836, 111 S. Ct. 2680 (1991) (Kennedy, J.,

joined by O'Conner, J., and Souter, J., concurring) (citing *Solem v. Helm*, 463 U.S. 277, 288, 77

L. Ed. 2d 637, 103 S. Ct. 3001 (1983)); see also *United States v. Marks*, 209 F.3d 577, 583 (6th

Cir. 2000).

Courts assessing whether the Eighth Amendment's limited guarantee of proportionality

has been satisfied must "grant substantial deference to the . . . legislatures . . . in determining the

types and limits of punishments for crimes." *Harmelin*, 501 U.S. 957, 999, 115 L. Ed. 2d 836,

111 S. Ct. 2680 (citing *Solem*, 463 U.S. at 290).  Thus, "[a] sentence within the maximum set by

statute generally does not constitute cruel and unusual punishment." *Austin v. Jackson*, 213 F.3d

298, 302 (6th Cir. 2000) (citing *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1994)).

Simonoski's sentence was within the maximum set by statute; he does not argue otherwise.  He

has not made out a plausible Eighth Amendment violation.

Simonoski argues that he should not have been sentenced to 18 years in prison because

he suffered from a major depressive disorder and was addicted to alcohol.  Simonoski has not

explained how these conditions have any relation to the charges to which he pleaded no-contest

or to the resulting sentence.  In his Ohio Court of Appeals brief, Simonoski cited *Robinson v.

California,* 370 U.S. 660 (1992), arguing that making alcohol addiction a crime and imposing

punishment constituted a cruel and unusual punishment.  *Robinson* does not support Ground Five

of Simonoski's petition.  Simonoski was not convicted of being an alcohol addict.  He was

convicted of attempted murder and felonious assault.  He did not argue in state court, nor does he

argue here, that he lacked the mental capacity to commit these crimes due to his addiction.  He

pleaded no-contest to these charges.

Simonoski does not argue that the sentencing decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  Nor has he shown that the trial court's sentencing decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  And, like grounds One, Three and Four, Ground Five challenges the trial court's sentence.  But the trial court's sentence involved only state law; Simonoski does not argue a federal issue.

Finally, the Ohio Court of Appeals' interpretation and application of Ohio law is entitled to AEDPA deference.  In considering Ground Five, the state court of appeals stated:

> {¶ 22}  In his fifth assigned error, Simonoski argues the trial court's imposition of the maximum, consecutive sentence constitutes cruel and unusual punishment because he suffered from alcoholism and major depressive disorder at the time he committed the acts.

> {¶ 23} There was no evidence presented at the plea or sentencing hearings showing that Simonoski suffered from alcoholism or major depressive disorder.  A review of the PSI also does not show that Simonoski suffered from these conditions.  The court sentenced Simonoski based solely on the acts he committed.  Accordingly, Simonoski's fifth assigned error is overruled.

ECF Doc. 8-1 at Page ID# 181.

Simonoski has failed to show than any Eighth Amendment violation resulted from the state court's sentence.  Ground Five does not present any federal issues; it involves nothing but a disagreement with an application of Ohio sentencing law.  The state court's decision is entitled to deference and Simonoski has not shown that his sentence was contrary to clearly established federal law or involved an unreasonable application of the facts.  Thus, even if it were not barred by the statute of limitations, I would recommend that Ground Five be dismissed as non-cognizable on habeas review.

**VI.** **Recommendation Regarding Certificate of Appealability**

    **A.** **Legal Standard**

As amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further." *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by §

2253(c)(2)," Rule 11(a).  In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B.     Analysis

When a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 485 (emphasis added).  As the Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.  In such a circumstance, no appeal would be warranted."  *Id.* at 486.  If the Court accepts the foregoing recommendation, Simonoski cannot show that the Court's ruling on the untimeliness of his petition is questionable.  Moreover, his petition, even if timely, presents only non-cognizable and unmeritorious claims.  The Court should conclude that Simonoski is not entitled to a certificate of appealability.

## VII.    Recommendations

Because Simonoski did not file a timely petition, I recommend that the court dismiss his petition under 28 U.S.C. § 2254 in its entirety.  Alternatively, I recommend that the Court deny the petition because Grounds One through Five present only non-cognizable and/or unmeritorious claims.  I further recommend that Simonoski not be granted a certificate of appealability.

Dated: September 18, 2018

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).